**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-----------------------------------------------------------X

YVONNE BENNETT,

                        Plaintiff,                    **MEMORANDUM AND ORDER**

  -against-

UNITED STATES OF AMERICA                19-CV-2199 (ST)

                        Defendant.
-------------------------------------------------------------X

**TISCIONE, United States Magistrate Judge:**

On April 15, 2019, Yvonne Bennett ("Bennett" or "Plaintiff") commenced this negligence action against the United States of America ("Government" or "Defendant") for damages allegedly sustained due to a trip and fall at Hempstead Post Office located at 200 Fulton Avenue, Hempstead, New York.

On March 10, 2022, this Court had a bench trial on the issue of liability. After reviewing the evidence and the post-trial submissions, the Court issues the findings of fact below and finds Defendant not liable for negligence.

    **I.     BACKGROUND**

        **A.  Findings of Fact**

1. Plaintiff, an individual female, is a resident of Hempstead, New York. *See* Trial Tr. at 39.

2. Plaintiff regularly went to the Hempstead Post Office once every month for nearly 30 years, without any incident. *Id*.

3. On July 10, 2017, however, when Plaintiff went to the Hempstead Post Office to purchase money orders, she tripped and fell on the front steps on the outside of Hempstead Post Office building. *Id*. at 10, 13. Prior to this incident in July 2017,

Plaintiff had neither noticed nor complained of any problem with the outside front steps. *Id*. at 43.

4. The Hempstead Post Office has outdoor stairs with five steps, a handrail in the middle and two handrails on the side. *Id*. at 42-43; Def.'s Tr. Exs. 1-3.

5. Plaintiff testified that she tripped, fell and bruised her knees due to her foot getting caught in a five-eighths of an inch wide crack on the third step; that she had two bags and carried one in each hand; that she did not hold the railing as she walked down the stairs; that she wore sneakers; and that she looked straight ahead, not down at the steps. *Id*. at 35, 45-46.

6. A few days after the incident, Plaintiff's daughter, Kimberly Hill, measured the gap in the alleged crack using a measuring tape. While Plaintiff claims to have fallen on the third out of the five outdoor steps, Plaintiff's trial exhibits include photographs that measure the gap in the alleged crack on the first step, and not the third step, where Plaintiff seems to have fallen. *Id*. at 20; *see* Pl.'s Trial Ex. 4-6.

7. As Plaintiff fell, Donna Smith, a window clerk notified Michelle Panton-Whyte, an assistant supervisor at the Hempstead Post Office. Trial Tr. at 84; Def.'s Post Trial. Mem. at 3. Panton-Whyte testified that as an assistant supervisor, her duties included providing customer services and inspecting the premises of the Hempstead Post Office for safety hazards. Trial Tr. at 81-84.

8. Every morning, including on the day when Plaintiff fell, Panton-Whyte inspected the front outdoor steps to ensure that there were no defects or hazards. *Id*. at 72-73, 76-79, 82-83.

9. Before Plaintiff fell on the front steps, Panton-Whyte had never received any complaint about the condition of the outdoor steps; nor had anyone ever fallen there. *Id*. at 83.

10. Panton-Whyte's duties also included investigating any accidents on the premises at the Hempstead Post Office. *Id*. Her practice was to conduct interviews, take notes and photographs, call the police or an ambulance, if necessary, and subsequently issue a written accident report. *Id*. at 83-84.

11. After learning of Plaintiff's fall, Panton-Whyte grabbed a notebook, pen and camera, went outside to speak to Plaintiff, who sat on the front steps. *Id*. at 45, 84. As she spoke to Plaintiff, Panton-Whyte wrote Plaintiff's responses in a notebook. *Id*. at 92-93, 107. Panton-Whyte took six photographs of Plaintiff sitting on the front steps. *Id*.; *See* Def.'s Tr. Exs. 1-6.

12. According to Panton-Whyte, Plaintiff was emotional, apologetic, and said the accident was her fault. *Id*. at 84-85. Panton-Whyte testified that Plaintiff told her that she missed a step and fell on her knees, and that it was her fault that she had missed the step. *Id*. at 85, 107-108. Panton-Whyte also testified that Plaintiff said that she had not brought her cane. *Id*. at 46, 85-86, 91, 106-107; Def.'s Trial Exs. 2- 5.

13. While Plaintiff denied using a cane before she fell, Plaintiff admitted to suffering from severe back problems since 1993. Trial Tr. at 49. She last worked in 1993 as a home health aide or a housekeeper, when she was 33 years old, and could no longer work afterwards because of her back problems. *Id*. Since 1997, Plaintiff has been receiving Social Security disability payments. *Id*. at 49-50.

14. Panton-Whyte did not see Plaintiff fall. *Id*. at 86. According to Panton-Whyte, Plaintiff made no mention of a crack, nor did she tell Panton-Whyte that she fell because her sneakers had been caught in a "crack" or in any part of the stairs. *Id*. at 86, 95-96. According to Panton-Whyte, there were no "cracks" in the steps, instead there were expansion joints in the steps, which were placed evenly. *Id*. at 76-79, 80, 111.

15. Since Plaintiff had bruises and scrapes on her knees, Panton-Whyte called 911 and remained with Plaintiff until an ambulance arrived. *Id*. at 15, 45, 87, 92-93, 96, 110; *see* DTE 4 and 5; *Id*. at; *see also* Pl.'s Tr. Ex. 2.

16. While they waited for an ambulance, Plaintiff called her daughter, who lived nearby *Id*. at 87, 92. According to Panton-Whyte, Plaintiff told her that she was reluctant to call her daughter because she was concerned that her daughter would be angry that Plaintiff left her home without a cane. *Id*. at 87. Panton-Whyte testified that when Plaintiff's daughter arrived, she was very disrespectful to her mother and yelled curses at her for leaving home without her cane. *Id*. at 87, 96, 88-89, 108-110.

17. Subsequently, the ambulance arrived, and Plaintiff left with her daughter. *Id*. at 96-97.

18. Panton-Whyte then went back inside the Post Office and told the postmaster about the incident. She gave a written statement of the accident, which was reviewed and signed that same day. *Id*. at 97-98, 103, 105; DTE 7. Panton-Whyte's statement provides as follows:

> On July 10, 2017 Clerk Donna Smith informed me that a wom[a]n informed her that she fell coming into the building. I went out to the front steps and Yvonne Bennett was sitting on the steps. She told me she missed her step and fell. She said she

4

> usually walks with a cane and she did not have it with her today.
> She stated that it was her fault that she missed a step.
> Her daughter arrived and was upset with her mother because
> she had fallen and did not have her cane. I called 911 to request
> assistance and the Hempstead police arrived and an ambulance from
> Northwell came later. Ms. Bennett was taken to North Shore
> Hospital.
> The steps were dry and clean and clear of debris

*See* Def.'s Trial. Ex. 7.

### B. Procedural History

On April 15, 2019, Plaintiff commenced this action. DE 1. Discovery was completed by November 2020. DE 10.

In December 2021, the parties consented to jurisdiction by Unite States Magistrate Judge and the case was reassigned to this Court for all further proceedings. DE 20.

On March 10, 2022, this Court held a bench trial on the issue of liability. The parties submitted their post-trial briefs in May 2022. DE 30, 31.

## II. LEGAL STANDARD

Under the Federal Torts Claims Act, the United States may be held liable for the negligence of its employees acting within the scope of their employment "under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. §§ 1346(b)(1), 2401(b) and 2671-2680. Therefore, as the accident in question occurred in New York, liability is to be determined under the law of New York. *See Goldstein v. United States*, 9 F. Supp. 2d 175, 186 (E.D.N.Y. 1998).

"To establish a prima facie claim of negligence under New York law, a plaintiff must show (1) the defendant owed a duty of care to the plaintiff; (2) the defendant breached that duty, and (3) the plaintiff suffered damage as a proximate result of that breach." *Christian v. U.S.*, 859

5

F. Supp. 2d 468, 472 (E.D.N.Y. 2012). Here, it is undisputed that Defendant owed a duty of care to Plaintiff. At issue is whether Defendant breached its duty of care and whether Plaintiff suffered any damages as a proximate result of that breach.

Under New York law, negligence in a trip and fall case is established when a plaintiff proves: (A) that a hazardous or dangerous condition existed; (B) that the defendant either created the condition or had actual or constructive knowledge of it and failed to correct it within a reasonable time after acquiring such knowledge; and (C) that the plaintiff's injury was proximately caused by the hazardous or dangerous condition. *See Leonardi v. United States*, No. CV 11-4827 LDW GRB, 2013 WL 5295714, at 2 (E.D.N.Y. 2013).

### A. No Hazardous or Dangerous Condition Existed at the Hempstead Post Office

The first prong in establishing negligence in a trip and fall case, is proving beyond a preponderance of the evidence that a hazardous or dangerous condition existed on the subject premises. *See Leonardi*, 2013 WL 5295714 at 2 (noting negligence in a trip and fall case is established when a plaintiff proves, inter alia: "that a hazardous or dangerous condition existed..."). "The issue whether a dangerous or defective condition exists on the property of another so as to create liability depends on the peculiar facts and circumstances of each case and is generally one of fact for the jury." *Houston v. McNeilus Truck & Mfg., Inc.*, 997 N.Y.S.2d 572, 574-75 (4th Dep't. 2015); *see also O'Connell v. United States*, 06-CV-3015 (JS)(WDW), 2008 WL 11416954, at 3 (E.D.N.Y. July 3, 2008) (noting that generally, the issue of whether a dangerous or defective condition existed is a question of fact for the jury).

"There is no per se rule with respect to the dimensions of a defect that will give rise to liability on the part of a landowner ..." *Argenio v. Metro. Transp. Auth.*, 277 AD2d 165, 166 (1st Dep't. 2000). "The Court of Appeals has consistently rejected any rule that liability turned upon

6

whether a hole or depression causing a pedestrian to fall was any specific number of inches in depth." *Perez v. 655 Montauk, LLC* (Sup. Ct. Suffolk Cnty. 2009), aff'd, 81 A.D.3d 619 (2d Dep't. 2011) (citing *Trincere v. County of Suffolk*, 90 NY2d 976 (1997)). In deciding whether a condition is dangerous, Courts consider whether the condition is "inherently dangerous [ ], and [ ] readily observable by those employing the reasonable use of their senses." *Perlicz v. Taratuta*, 260 A.D.2d 359, 360, 687 N.Y.S.2d 702, 702 (2d Dep't 1999).

Here, Plaintiff provided no evidence at trial to show, as was her burden, that the expansion joint, which she mis-identified as a "crack," was defective. Plaintiff testified that she regularly went to the Hempstead Post Office once every month for nearly 30 years, without any incident. Prior to this incident in July 2017, Plaintiff had neither noticed nor complained of any problem with the outside front steps. *Id*. at 43. Plaintiff testified that she tripped and fell due to her foot getting caught in a five-eighths of an inch wide crack on the third step. *Id*. at 20, 35, 45-46. While Plaintiff claims to have fallen on the third out of the five steps, Plaintiff's trial exhibits include photographs that show that the step with tape measure is the first step, and not the third step, where Plaintiff seems to have fallen. *Id*. at 20; *see* Pl.'s Trial Ex. 4-6. Even if the step with the tape measure is the step that she claims she fell on, Plaintiff has not met her burden by preponderance of the credible evidence. *Id*. at 20. By way of her own admission, Plaintiff had two bags and carried one in each hand, she did not hold the railing as she walked down the stairs, and she looked straight, not down at the steps. *Id*. at 20, 35, 45-46.

For Defendant, Panton-Whyte testified that she inspected the front outdoor stairs daily, including on the day Plaintiff fell, and did not consider the expansion joints defective in any respect. Trial Tr. at 72-73, 76-79, 82-83. According to Panton-Whyte, there were no "cracks" in the steps, instead there were expansion joints in the steps, which were even. *Id*. at 76-79, 80,

7

111.  Panton-Whyte maintained a contemporaneous and credible written record of Plaintiff's fall, and testified that the steps were dry, clean, and clear of debris; that Plaintiff told her that she missed her step and fell; and that Plaintiff also mentioned that she usually walks with a cane but did she did not have it with her that day.  Trial Tr. at *Id*. at 84-85, 107-108.  Plaintiff denied using a cane before she fell, however from 1993 to the date of her accident in 2019 (a total of 24 years), she suffered from "severe" back problems, and was receiving Social Security disability payments since 1997. *Id*. at 49-50.  Panton-Whyte testified that when Plaintiff's daughter arrived, she was very disrespectful to her mother and yelled curses at her for leaving home without her cane. *Id*. at 87, 96, 88-89, 108-110.  Further, before Plaintiff fell on the front steps, Panton-Whyte had never received any complaint about the condition of the outdoor steps; nor had anyone ever fallen there. *Id*. at 83.

Based on the evidence presented during the trial, including the photographs of the stairway where the injury allegedly occurred, as well as the testimony of Plaintiff, her daughter, and Panton-Whyte, who inspected the premises immediately following the accident, this Court finds that Plaintiff has failed to carry her burden of showing the existence of a dangerous or defective condition.  To the extent that a defect in the form of a gap may have existed on the stairway, this Court finds that the defect was so slight or minor a defect that it could not constitute a hazardous condition nor be deemed negligence given the frequent use of the stairway by others including Plaintiff without incident. *Ducrepin v. U.S.,* 964 F.Supp. 659, 663-64 (E.D.N.Y. 1997); *see also, Lewis–Kures v. Edward R. Walsh & Co.*, 102 F.2d 42, 45 (2d Cir.) (holding that a crack measuring at most one inch in width and three quarters of an inch in depth in a step, even if longstanding, was "so slight a defect that continued use of the steps should be held as a matter of law not to constitute negligence"); *O'Connell*, 2008 WL 11416954, at 3; *see*

8

*also Amplo v. Milden Ave. Realty Associates*, 862 N.Y.S.2d 519, 520 (2d Dep't 2008) ("[T]he 'groove' in the curb was actually an expansion joint built into the pavement to prevent the ramp from cracking . . . plaintiff failed to identify how or why the joint was dangerous or constituted a defect") (citing *11 Lacy v. New York City Hous. Auth.*, 772 N.Y.S.2d 360, 361 (2d Dep't 2004).

Thus, Plaintiff has failed to sustain her burden of proof to show that the expansion joint was a dangerous condition.

### B. Plaintiff Failed to Establish Actual or Constructive Knowledge

A defendant has actual notice of a defect if it created the defect or gained actual knowledge of the defect's existence. *See McHale v. Westcott, 893 F.Supp. 143, 148–49 (N.D.N.Y.1995) (*citing *Torri v. Big V of Kingston, Inc.*, 147 A.D.2d 743, 744, 537 N.Y.S.2d 629, 631 (3d Dep't.1989)). A defendant has constructive notice of a defect if the defect is "visible and apparent" and "in existence for a sufficient period of time before the accident so that the defendant could discover and remedy it." *Id*. (citing *Hammond–Warner v. United States*, 797 F.Supp. at 211).

Here, this Court further finds that, apart from the trivial nature of the defect, Plaintiff has failed to establish constructive or actual notice of the defect on the part of Defendant. Not only did Panton-Whyte credibly testify that the gap was merely an expansion joint, which was not hazardous, but indeed, Plaintiff's own testimony in this regard is conflicting inasmuch as while Plaintiff claims to have fallen on the third out of the five steps, Plaintiff's trial exhibits include photographs that show that the step with tape measure is the first step, and not the third step, where Plaintiff seems to have fallen. *Id*. at 20; *see* Pl.'s Trial Ex. 4-6. Further, at one point during the trial, Plaintiff erroneously testified that the crack was five inches wide, as opposed to five-eights of an inch wide. *Id*. at 30-34. In any event, Plaintiff never reported either condition

9

of the stairway, nor did anyone discover or report any problem with it during the regular inspections conducted by Panton-Whyte. *Id*. at 43. Indeed, this Court credits the testimony of Panton-Whyte that she did not observe any defect on the stairs. *See Ducrepin, 964 F.Supp.* at 664 (holding that the plaintiff has failed to establish constructive or actual notice of the defect on the part of defendant); *see also McHale v. Westcott,* 893 F.Supp. 143, 148–49 (N.D.N.Y.1995) (holding that plaintiff had failed to establish defendant's notice of allegedly defective stairs, where the defendant conducted annual inspections but never discovered the defect, no complaints were ever filed about the stairs prior to plaintiff's injury, and plaintiff failed to notice the defect despite using the stairs once a week for two years).

Thus, Plaintiff has failed to show that Defendant either created the allegedly defective step or had actual or constructive knowledge of any such condition.

### C. Plaintiff's Injury was Caused by her Missed Step

The third prong in establishing negligence in a trip and fall case, is proving beyond a preponderance of the evidence that the that the plaintiff's injury was proximately caused by the hazardous or dangerous condition. *See Leonardi*, 2013 WL 5295714 at 2 (noting negligence in trip and fall case is established when a plaintiff proves, inter alia: "that the plaintiff's injury was proximately caused by the hazardous or dangerous condition. . ."). "The overarching principle governing determinations of proximate cause is that a defendant's negligence qualifies as a proximate cause where it is a substantial cause of the events which produced the injury." *Hain v. Jamison*, 28 N.Y.3d 524, 528–29 (NY 2016); *see also Mazella v. Beals*, 27 NY3d 694, 706 (NY 2016).

By Plaintiff's own admission to Panton-Whyte immediately after she fell, which was the first account of the fall Plaintiff gave to anyone, and as documented in Panton-Whyte's written

10

statement that Plaintiff fell because she missed a step. Def.'s Trial. Ex. 7. Accordingly, Defendant's actions did not proximately cause, and it is not liable for Plaintiff's fall and alleged injuries.

Further, Plaintiff admits that when she fell, she wore sneakers with flat soles, carried bags in both hands and was not holding the handrails. *Id*. at 35, 45-46. Plaintiff did not identify any witnesses to the accident. *See generally, id*. Plaintiff never explained or testified how the side of her foot or sneaker got caught in the crack. Plaintiff was not, for example, wearing a shoe with heels which were small enough to get lodged in a five-eighths wide inch opening. In any case, there was no testimony concerning the depth of the alleged "crack." Given the configuration of the expansion joint, Plaintiff has failed to precisely explain how her sneaker with a flat bottom, was caught on the step that resulted in her fall.

Thus, the Court finds that Plaintiff has failed to satisfy her burden of establishing that her injury was caused by the Defendant's negligence.

### III. CONCLUSION

For the foregoing reasons, this Court finds Defendant not liable for negligence because no hazardous or dangerous condition existed at the Hempstead Post Office; Plaintiff failed to establish Defendant's actual or constructive knowledge of the allegedly hazardous stairway; and

Plaintiff's injury was caused by her own missed step. Accordingly, the Clerk of the Court is directed to issue Judgment in favor of the Defendant.

**SO ORDERED.**

                                                                                                          ____/s/_____
                                                                                                          Steven L. Tiscione
                                                                                                          United States Magistrate Judge
                                                                                                          Eastern District of New York

Dated: Central Islip, New York
         December 14, 2022